UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JONATHAN C. BAUM                                                            PLAINTIFF

v.                                            CIVIL ACTION NO. 3:15-cv-00787-CRS-CHL

METRO RESTORATION SERVICES, Inc.                                DEFENDANT

Memorandum Opinion

I.      Introduction

This matter is before the Court on the motion of Defendant Metro Restoration Services

("Metro Restoration") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF

No. 18. Plaintiff Jonathan C. Baum responded, ECF No. 23. Metro Restoration replied, ECF No.

24. For the reasons discussed below, the Court will grant in part and deny in part the motion for

summary judgment.

II.     Background

A.      Metro Restoration and Baum's Work Schedule

Metro Restoration is a restoration company that remediates property after severe weather

events. Baum Dep. 53–54, ECF No. 23-1. In May 2013, Metro Restoration hired Baum as a

scheduler. *Id*. at 38. As a scheduler, Baum's main responsibility was to schedule crews of

workers to perform remediation work for Metro's customers. *Id*. at 40. Estimators called Baum

or sent him text messages about work that needed to be done, and Baum used his personal cell

phone or his office phone to dispatch the crews. *Id*. at 40; Cahill Dep. 19, ECF No. 23-2. Baum's

direct supervisor was Patrick Cahill, Metro Restoration's owner and CEO. Cahill Dep. 33, ECF

No. 23-2.

Metro Restoration's normal hours of operations were between 7:30 A.M. and 4:30 P.M. Employee Handbook 14, ECF No. 18-5. The parties disagree when Baum was scheduled to work. According to Cahill, Baum's regularly scheduled office hours were from 8:00 A.M. to 5:00 P.M., Monday through Friday. *Id.* at 19. Ruby Neil, Metro Restoration's office manager, expected Baum to work between 7:30 A.M. and 4:00 P.M. Neil Dep. 19, ECF No. 23-3. Baum testified that when he started working for Metro Restoration, his hours were between 8:00 A.M. and 3:00 P.M. Baum Dep. 39, ECF No. 23-1. He says that after he had been working for about a month at Metro Restoration, his hours shifted to 7:00 A.M. to 3:00 P.M. *Id.* Baum occasionally worked on holidays and weekends, depending on when crews needed to be scheduled. Cahill Dep. 27, ECF No. 23-2.

Baum says he was permitted to work from other locations outside of Metro Restoration's office, including his home. Baum Dep. 26–27, ECF No. 23-1. If Baum was going to be working away from the company office, he testified that he would call Cahill to let him know his whereabouts. *Id.* at 60. As a scheduler, he was expected to participate in site visits, inventory equipment, and deliver equipment to crews, all of which required him to be away from the office. Cahill Dep. 16–17, ECF No. 23-2.

Cahill attested that Baum's capability to fulfill his duties as a scheduler was restricted when he worked at his home: at home, Baum could only make and receive phone calls regarding requests for work from Metro Restoration's customers. *Id.* at 27. In contrast, when he was in the company office, he could also lay out the crew members' schedules and place their paperwork in a central location. Baum Dep. 74, ECF No. 23-1.

In 2014 and 2015, Baum began experiencing a number of personal events, which resulted in him missing work. For example, Baum and his wife separated in June of 2014 and were

divorced in March of 2015. *Id*. at 12. Baum left the office on one occasion after his father-in-law arrived at his house with a truck to move out his wife. *Id*. at 81. He also missed work for child-care needs and to meet with his divorce attorney. *Id*. at 94–95. Additionally, Baum's dog needed to undergo a surgical procedure, and Baum asserts that he had to take the dog to the veterinarian during the hours in which he was scheduled to work. *Id*. at 96–97.

In December 2014, Baum was diagnosed with an enlarged right ventricle in his heart and heart palpitations. *Id*. at 92; Medical R. 2, ECF No. 23-4. In February 2015, Baum's diagnosis was changed to additionally include an atrioventricular block, Mobitz type 1, Bradycardia, and chest pain. Medical R. 2, ECF No. 23-5.

Baum did not request any accommodation for his heart condition while he worked for Metro Restoration. Baum Dep. 94, ECF No. 23-1. He also testified that his heart condition does not affect his ability to walk, perform manual tasks, care for himself, speak, breathe, learn, or work. *Id*. at 103–07. He also affirmed that his heart condition does not affect his vision or hearing. *Id*.

Cahill had knowledge that Baum missed work on some occasions because of an unspecified heart procedure, various visits to the doctor's office, and the performance of a CAT scan on an unspecified location of his body. Cahill Dep. 30, ECF No. 23-2. On March 23, 2015, Baum sent Cahill a text message that stated, "Sorry, I had to get to E.R. My chest is fucking killing me. I might have had a mild heart attack last night, worst that its ever hurt. Woke me out of my sleep." *Id*. at 31. When Cahill responded to this text message by asking Baum if he needed anything, Baum sent the following reply: "A functional heart, LOL. I'm at Jewish. E.K.G. looks Ok. I'm waiting for more T.R.S.T. They might do heart cath today. I'll keep you posted." *Id*. at 31–32.

Neil documented eighteen days between January and April 2015 when Baum failed to come into Metro Restoration's office or left early from the office. Cahill Dep., List of Dates 114, ECF No. 23-2. Neil listed the reasons for his absences as "left early due to ozone," "left 10:00, kid sick/dr," "left early— heart," "out— heart," "in late for lawyer," "snow day," "morning/cat scan," "afternoon/consultation," "dr," "worked from home," "heart procedure, "out/water could not get out of neighborhood," and "daughter teeth." *Id*. Despite the number of days that Baum was not in Metro Restoration's office, Cahill never disciplined him for poor attendance. Cahill Dep. 22, ECF No. 23-2. Cahill says that Baum came to him on several occasions and explained that he would try to improve his attendance. *Id*. In contrast to his treatment of Baum, Cahill disciplined other employees for attendance reasons, including by giving them written and oral warnings, and by suspending and terminating them. *Id*. at 23–24.

B.     Events Leading Up to Baum's Termination

On the weekend of Friday, April 3, 2015 through Sunday April 5, 2015, there were a number of weather-related, catastrophic events that created business for Metro Restoration. Baum Dep. 57, ECF No. 23-1. That Friday, however, Baum did not go to Metro Restoration's office because his children's school had been canceled due to the weather. *Id*. at 58.

Also on Friday, April Scott, a coworker and friend of Baum's, was moving to a new apartment. *Id*. at 63–65. Cahill had given Scott permission to use a company vehicle to move, provided that Metro Restoration did not need the vehicle for business-related purposes. Cahill Dep. 41, ECF No. 23-2. Cahill testified that Baum called him on Friday morning and told him that Scott could not return the vehicle because her apartment complex's parking lot was flooded. *Id*. at 42. When Cahill ended his conversation with Baum, he checked the GPS on the company vehicle that Scott had borrowed and discovered that the van had been moved that morning to

4

some distance from her apartment. *Id*. Cahill then called Baum back and told him that Metro Restoration needed the vehicle returned immediately. *Id*. Baum replied that the company vehicle was loaded with Scott's belongings and that she would need to unload the vehicle before returning it. *Id*. Cahill sent another employee to pick up the vehicle. *Id*. Upon arriving at the apartment complex, the employee found that the parking lot was not flooded, as Baum had mentioned in the original phone call to Cahill. *Id*.

On Saturday, April 4, 2015, Baum also did not go to Metro Restoration's office. Baum Dep. 63–65, ECF No. 23-1. He instead helped Scott move to her new apartment. *Id*. He brought over a trailer to her house and sat in the truck while he dispatched crews for Metro Restoration on his cell phone. *Id*. at 63–64.

C.    Baum's Termination

On April 8, 2015, Cahill went to Baum's house to tell him that he was terminated from his position as a scheduler. *Id*. at 84–85. According to Baum, Cahill told him that, because of Baum's "health issues and doctors' appointments and him not being able to sleep at night, it was just causing a huge turmoil, and he felt he needed to let [Baum] go immediately." *Id*. at 86. Cahill also told Baum that he could hire him as an estimator but that it would require him to be on roofs. *Id*. at 87. As Baum is afraid of being on a roof, he felt like he could not accept the estimator position. *Id*. at 90–91.

At an unemployment hearing on July 6, 2015, Cahill testified, "I told [Baum] it was clear to me that he was way too busy with his child care and health issues and doctor's appointments and everything but the job I hired him to do." Cahill Dep. Ex. 4 122, ECF No. 23-2. He also stated, "We had discussed— I've got a whole bunch of dates that he had taken off, and [Baum]

told me that he knew he wasn't at work enough, but he was getting some things lined out, and it was going to get better." *Id*.

In November 2015, Baum obtained a job at Nemeth Engineering, a metal shop, as an assembler. Baum Dep. 27, 29, ECF No. 23-1. As an assembler, Baum performed welding, fabrication, and layout for fabrication. *Id*. at 29. In February 2016, Baum left Nemeth Engineering and accepted a position with Ford Motor Company, a position that he still holds. *Id*. at 20. Baum works in Ford's engine department. *Id*. He uses a hoist to place a transfer case on the transmission, and then he tightens screws using an automatic gun. *Id*. at 21. When applying for his job at Ford, Baum wrote on his application that he never had experienced heart trouble. Ford Appl. 3, ECF No. 18-7.

D.     Procedural History

Baum later sued Metro Restoration in the Jefferson County, Kentucky Circuit Court for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*., the Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. Ann. § 344.010, *et seq*., and the Kentucky Equal Opportunities Act (KEOA), Ky. Rev. Stat. Ann. § 207.130, *et seq*. Compl., ECF No. 1-3. Baum asserts that (1) he a qualified person with a disability because of his heart condition, which substantially limits him in the major life activities of lifting and working, as well as his circulatory and cardiovascular systems, and because he was "regarded as" a person with a disability, (2) Metro Restoration failed and refused to provide reasonable accommodations for his return to work despite his requests to do so, (3) his being a qualified person with a disability motivated Metro Restoration's decision to terminate him, and (4) these actions violated the ADA's and the KCRA's disability discrimination and retaliation provisions (Count I). *Id*. ¶¶ 22–31. Baum also alleges that Metro Restoration terminated him because of his physical disability,

6

which violated the anti-discrimination provisions of the KEOA (Count II). *Id*. ¶¶ 32–36. He seeks compensatory damages, punitive damages, liquidated damages, and equitable relief reinstating him to his former position as a scheduler. *Id*. at 5.

In October of 2015, Metro Restoration filed an answer to Baum's suit in the state court. Answer, ECF No. 1-4. Metro Restoration then removed the case to this Court under 28 U.S.C. §§ 1331 and 1441. Not. Removal 1, ECF No.1.

III.    Discussion

Metro Restoration now moves for summary judgment under Federal Rule of Civil Procedure 56(a). Mot. Summ. J. 1, ECF No. 18. Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Metro Restoration argues that the Court should grant summary judgment on Baum's claims because he does not meet the definitions of a person with a disability provided by the ADA, KCRA, and KEOA, and thus his claims fail as a matter of law. Mem. Supp. Mot. Summ. J. 1, ECF No. 18-1. Baum asserts in opposition that he is a person with a disability under the statutory definitions and that he is able to show that Metro Restoration discriminated against him

in violation of the ADA, KCRA, and KEOA. Resp. Opp. Mot. Summ. J. 13–24, ECF No. 23. Because the parties' arguments focus on whether Baum meets the statutory definitions of a person with a disability, this Court will address only this narrow issue in this memorandum opinion.

### A.    Whether the KCRA Incorporates the ADA Amendments Act of 2008

Courts typically analyze the KCRA congruent with the ADA's statutory scheme and terms. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001). An initial matter that this Court must address is whether the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101, *et. seq*. applies to Baum's KCRA claims. Baum contends that the KCRA incorporates the ADAAA because the KCRA is intended to execute the policies embodied in the ADA and other federal civil rights laws. *Id*. at 11–13. Metro Restoration does not address this issue and inconsistently analyzes Baum's KCRA claims under both the pre- and post-2008 ADA standards.

Congress intended the ADAAA to, among other objectives, reinstate a "broad scope of protection to be available under the ADA" and to "convey that the question of whether an individual's impairment is a disability under the ADA should not demand excessive analysis." 110 P.L. 325(7)(b)(1), (5).

The United States Court of Appeals for the Sixth Circuit and district courts in the Western District of Kentucky have determined that the KCRA does not incorporate the language of the ADAAA and thus that the pre-2008 ADA standards apply to claims arising under the state statute. *Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011); *Milholland v. Sumner Cty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009); *Darby v. Gordon Food Servs.*, No. 3:11-cv-00646-DJH, 2015 U.S. Dist. LEXIS 74135, at *14 n.2 (W.D. Ky. June 8, 2015); *Brown v.*

*Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013). Given this precedent, this Court will apply the ADA, as amended in 2008, to Baum's ADA claim and the pre-2008 ADA standards to Baum's KCRA claim. The Court will separately examine whether Baum is an individual with a disability under the two statutes.

        B.     <u>Whether Baum is an Individual with a Disability under the ADA</u>

The ADA prohibits employers from discriminating against an employee with a disability. *See* 42 U.S.C. § 12112. The first step a court must take in evaluating an ADA claim is to determine whether the plaintiff is a person with a disability. *Wolfe v. United States Steel Corp.*, 567 F. App'x 367, 371 (6th Cir. 2014). Section 12102(1) of the ADA defines "disability" as

> (A) "a physical or mental impairment that substantially limits one or more major life activities of such individual,"
> (B) "a record of such an impairment," or
> (C) "being regarded as having such an impairment."

42 U.S.C. § 12102(1). Baum's ADA claim rests on the definitions of disability found in § 12102(1)(A) and § 12102(1)(C). Compl. ¶¶ 22–31, ECF No. 1-3.

        *i. Whether Baum Meets the § 12102(1)(A) Definition of a Person with a Disability*

Section 12102(1)(A) defines a person with a disability as someone who suffers from a "physical or mental impairment that substantially limits one or more major life activities of such individual." Thus, to meet the § 12102(1)(A) definition of a person with a disability, the plaintiff must not only show that he has a "physical or mental impairment" but also that the impairment "substantially limits one or more major life activities." *Neely v. Benchmark Family Servs.*, 640 Fed. App'x 429, 432–33 (6th Cir. 2016).

In his complaint, Baum maintains that he meets the § 12102(1)(A) definition of a person with a disability because he suffers from a heart condition that substantially limits his ability to lift and work, as well as his circulatory and cardiovascular systems. Compl. ¶ 23, ECF No. 1-3.

At the summary judgement stage, the parties do not contest whether Baum suffers from a heart-related impairment; instead, their arguments regarding Baum's meeting the § 12102(1)(A) definition of a person with a disability focus on whether his heart-related impairment substantially limits major life activities. Metro Restoration asserts that Baum cannot meet the § 12102(1)(A) definition of a person with a disability because he testified that that his heart-related impairment does not substantially limit him from lifting or working. Mem. Supp. Mot. Summ. J. 11, ECF No. 18-1; Reply 3–4, ECF No. 24. Metro Restoration does not address whether Baum's alleged heart-related impairment also substantially limits his circulatory and/or cardiovascular systems. *See id.*

Baum contends in opposition that his medical records provide that he suffers from a heart-related impairment that substantially limits his circulatory and cardiovascular systems. Resp. Opp. Mot. Summ. J. 16–17, ECF No. 23. He also argues that his testimony shows that his heart-related impairment substantially limits his lifting and breathing.[1] *Id.* at 17–18. He does not dispute that his heart-related impairment fails to substantially limit his ability to work, *see id.*, thereby abandoning this portion of his ADA claim.[2] Summary judgement will thus be granted on his ADA claim based on the § 12102(1)(A) definition of a person with a disability to the extent that the claim involves an allegation that his heart-related impairment substantially limits his ability to work.

The ADA regulations state that § 12102(1)(A)'s term "substantially limits" is intended to be construed broadly in favor of "expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1). It is not intended to be a "demanding standard." *Id.*

---

[1] It is unclear why Baum mentions breathing as a major life activity, given that he does not allege in his complaint that his heart-related impairment substantially limits his ability to breathe.

[2] Baum also testified that his heart-related impairment does not affect his ability to work. Baum Dep. 106–07, ECF No. 23-1.

10

The statute lists major life activities as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include, but are not limited to, "the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id*. § 12102(2)(B). The ADA regulations also list the operation of the cardiovascular system as a major life activity. 29 C.F.R. § 1630.2(h)(1)(ii).

Here, Baum cannot show that his heart-related impairment substantially limits him in the major life activity of lifting. He testified that his heart-related impairment caused him to be under a weight restriction for less than a week. Baum Dep. 105, ECF No. 23-1. Although the ADA regulations state that an impairment lasting less than six months can be substantially limiting, 29 C.F.R. § 1630.2(j)(1)(viii), the small duration and effect of Baum's heart condition on his ability to lift contradicts a finding that the impairment substantially limits this life activity. Therefore, summary judgment is appropriate on Baum's ADA claim based on the § 12102(1)(A) definition of a person with a disability to the extent that that it involves a substantial limitation on his ability to lift.

In sum, Metro Restoration is entitled to a partial summary judgment on Baum's ADA claim that is based on the § 12102(1)(A) definition of a person with a disability. The Court will grant summary judgment on this claim to the extent that the claim involves substantial limitations on his ability to lift. The Court will also grant summary judgment on this claim to the extent that the claim involves his abandoned allegation that his heart-related impairment substantially limits his ability to work. The Court declines at this time to grant summary

11

judgment on the claim to the extent that the claim involves a substantial limitation on Baum's circulatory and cardiovascular systems because Metro Restoration never addresses the issue in its motion, memorandum of law, or reply.

>    *ii. Whether Baum Meets the § 12102(1)(C) Definition of a Person with a Disability*

Section 12102(1)(C) defines a person with a disability as someone who is "regarded as having such an impairment." Metro Restoration argues that Baum cannot meet the § 12102(1)(C) definition of an individual with a disability because he cannot show that Cahill perceived him to have a heart-related impairment or that Cahill accordingly excluded him from a wide class of positions. Mem. Supp. Mot. Summ. J. 15–20, ECF No. 18-1. Baum maintains that the evidence demonstrates that Cahill knew that he suffered from a heart condition and thus regarded him as an individual with an impairment. Resp. Opp. Mot. Summ. J. 21–23, ECF No. 23.

A plaintiff meets the § 12102(1)(C) definition of a person with a disability if "the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The § 12102(1)(C) definition does not apply to "impairments that are transitory or minor," defined as an impairment that lasts six months or less. *Id.* § 12102(3)(B).

"[I]t is not enough that the employer is simply aware of a plaintiff's symptoms; rather the plaintiff must show that the employer regarded the individual as 'impaired' within the meaning of the ADA. *Neely*, 640 F. App'x at 435–36. Because "whether a plaintiff was 'regarded as disabled' is 'a question embedded almost entirely in the employer's subjective state of mind,'" it is "extraordinarily difficult" to prove an ADA case based on the § 12102(1)(C) definition of a

person with a disability. *Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 567 (6th Cir. 2009) (citing *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)).

In this case, Baum offers evidence showing only that Cahill was aware of his symptoms. Cahill testified that he had knowledge that Baum missed work on some occasions because of an unspecified heart procedure, various visits to the doctor's office, and the performance of a CAT scan on an unspecified location of his body. Cahill Dep. 30, ECF No. 23-2. And on March 23, 2015, Baum and Cahill exchanged text messages about Baum's heart and trip to the emergency room. *Id*. at 31–32. These facts, construed in the light most favorable to Baum, do not show that Cahill regarded Baum as impaired.

In sum, Baum is unable to demonstrate that he meets the § 12102(1)(C) definition of a person with a disability, and summary judgment is appropriate on his ADA claim that is based on this definition.

### C.    Whether Baum is a Person with a Disability under the KCRA

Like the ADA, the KCRA prohibits employers from discriminating against an employee with a disability. *See* Ky. Rev. Stat. Ann. § 344.040(1)(a). The KCRA is interpreted consistently with the ADA. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bank One v. Murphy*, 52 S.W.3d 540, 544 (Ky. 2001). But, as previously noted, the KCRA follows the pre-2008 ADA standards. *Breen*, 417 F. App'x at 486.

In relevant part, the KCRA defines disability as:

(a) "A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual"
(b) "A record of such an impairment," or
(c) "Being regarded as having such an impairment."

Ky. Rev. Stat. Ann. § 344.010(4). Baum's ADA claim rests on the definitions of a person with a disability found in § 344.010(4)(a) and § 344.010(4)(c). Compl. ¶¶ 22–31, ECF No. 1-3.

13

> i. *Whether Baum Meets the § 344.010(4)(a) KCRA Definition of an Individual with a Disability*

Section 344.010(4)(a) defines a person with a disability as someone who suffers from "[a] physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual." As with his ADA claim, Baum maintains in his complaint that he meets the § 344.010(4)(a) definition of a person with a disability because he suffers from a heart condition that substantially limits his ability to lift and work, as well as his circulatory and cardiovascular systems. Compl. ¶ 23, ECF No. 1-3. The parties' arguments about whether Baum meets the definition of a person with a disability under § 344.010(4)(a) are identical to their arguments about whether he meets the definition of a person with a disability under 42 U.S.C. § 12102(1)(A). Accordingly, the parties do not contest whether Baum suffers from a heart-related impairment; instead, their arguments regarding Baum's meeting the § 344.010(4)(a) definition of a person with a disability focus on whether this impairment substantially limits major life activities. Metro Restoration asserts that Baum cannot meet the § 344.010(4)(a) definition of a person with a disability because he testified that that his alleged heart-related impairment does not substantially limit him from lifting or working. Mem. Supp. Mot. Summ. J. 11, ECF No. 18-1; Reply 3–4, ECF No. 24. Metro Restoration does not specifically address whether Baum's alleged heart-related impairment also substantially limits his circulatory and/or cardiovascular systems. *See id.*

Baum contends, however, that his medical records provide that he suffers from a heart-related impairment that substantially limits his circulatory and cardiovascular systems.[3] Resp.

---

[3] Whether Baum's alleged heart-related impairment substantially limits his circulatory and cardiovascular systems is inapplicable to his KCRA claim based on the § 344.010(4)(a) definition of a person with a disability because only after the enactment of the ADAAA did the

Opp. Mot. Summ. J. 16–17, ECF No. 23. He also argues that his testimony shows that his heart-related impairment substantially limits his lifting and breathing. *Id*. at 17–18. He does not dispute that his heart-related impairment fails to substantially limit his ability to work, *see id*., thereby abandoning this portion of his KCRA claim.

To meet the § 344.010(4)(a) definition of a person with a disability under the pre-2008 ADA standards, the plaintiff must show that he has a "physical or mental impairment" and that "the limitation on the major life activity is 'substantial.'" *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195 (2002) (internal citation omitted). To show that he is substantially limited by an impairment, the plaintiff must provide evidence demonstrating that that he is "unable to perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." *Schave*, 127 S.W.3d at 593 (citing *Williams*, 534 U.S. at 195–96). A court should consider the following factors to determine whether an impairment substantially limits a plaintiff in a major life activity:

> [T]he nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment

*Id*. (citing *Williams*, 534 U.S. at 196).

---

ADA define major life activities as including bodily systems. *See* 42 U.S.C. § 12102(2)(B) (2016). *Cf.* 42 U.S.C. § 12102(2)(B) (2007).

The pre-2008 ADA did not define "major life activities." *See* 42 U.S.C. § 12102 (2007); *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002) ("There is no exhaustive list of major life activities."). In interpreting the KCRA's § 344.010(4)(a) definition of a person with a disability using the pre-2008 ADA standards, the Supreme Court of Kentucky identified major life activities as including "walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Schave*, 127 S.W.3d at 592.

Regarding the impairment's effect on his ability to lift, Baum testified that, as a result of his heart diagnosis, he was under a weight restriction for less than a week. Baum Dep. 104–05, ECF No. 23-1. Considering the short duration and small effect that Baum's heart-related impairment had on his ability to lift, the Court finds that the heart-related impairment does not substantially limit his ability to lift.

Overall, summary judgment is appropriate on Baum's KCRA claim to the extent that it is based on the § 344.010(4)(a) definition of a person with a disability because (1) he abandoned his claim that his heart-related impairment substantially limits his ability to work, (2) whether his impairment substantially limits his circulatory and cardiovascular systems is inapplicable to his KCRA claim, and (3) the effect of his heart-related impairment on his ability to lift was insubstantial.

> *ii. Whether Baum Meets the § 344.010(4)(c) KCRA Definition of a Person with a Disability*

Section 344.010(4)(c) defines a person with a disability as someone who is "regarded as having such an impairment." The parties' arguments about whether Baum meets the definition of a person with a disability under § 344.010(4)(c) are identical to their arguments about whether he meet the definition of a person with a disability under 42 U.S.C. § 12102(1)(C). Thus, Metro Restoration argues that Baum cannot meet the § 344.010(4)(c) definition of an individual with a

16

disability because Baum cannot show that Cahill perceived him to have a heart-related impairment and did not consequently exclude him from a wide class of positions. Mem. Supp. Mot. Summ. J. 15–20, ECF No. 18-1. Baum maintains that the evidence shows that Cahill knew that Baum suffers from a heart condition and accordingly regarded him as an individual with an impairment. Resp. Opp. Mot. Summ. J. 21–23, ECF No. 23.

To demonstrate that he was "regarded as" a person with a disability under § 344.010(4)(c), a plaintiff must prove:

> (1) A covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) A covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have, or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Schave*, 127 S.W.3d at 594 (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999)). The plaintiff must show that the employer considered him to be a person with an impairment and thought that the impairment would prevent him from "performing a broad class of jobs." *Id.* (citing *Ross*, 237 F.3d at 709).

In this case, and as explained above, Baum does not provide evidence showing that Cahill believed that he suffers from a heart-related impairment. Furthermore, when Cahill terminated Baum, he told him that he could hire him as an estimator but that the position would require him to be on roofs. Baum Dep. 87, ECF No. 23-1. Cahill's offering Baum the estimator position demonstrates that he did not believe Baum's heart-related impairment would prevent him from performing a broad class of jobs. Therefore, Baum does not meet the definition of a person with a disability under § 344.010(4)(c).

Summary judgment is appropriate on Baum's KCRA claim based on the § 344.010(4)(c) definition of a person with a disability.

     D.     <u>Whether Baum is a Person with a Disability under the KEOA</u>

The KEOA prohibits an employer from discriminating against an employee because of a disability. Ky. Rev. Stat. Ann. § 207.150(1). The KEOA defines "physical disability" as "the physical condition of a person whether congenital or acquired, which constitutes a substantial disability to that person and is demonstrable by medically accepted clinical or laboratory diagnostic techniques." Ky. Rev. Stat. Ann. 207.130(2). Metro Restoration argues that Baum is not an individual with a disability under the KEOA because the KEOA definition of an individual with a disability is more restrictive than those of the ADA or the KCRA and because he testified in his deposition that his heart-related impairment does not limit any major life activity. Mem. Supp. Mot. Summ. J. 22, ECF No. 18-1. Baum asserts in opposition that "[h]e has provided evidence that he has an impairment that substantially limits major bodily functions and is therefore an individual with a disability" under the KEOA. Resp. Opp. Mot. Summ. J. 24, ECF No. 23.

There is little Kentucky case law interpreting the KEOA's definition of a person with a disability. *Hack v. C-Plant Fed. Credit Union*, No. 5:08-CV-00111-TBR, 2010 U.S. Dist. LEXIS 53783, at *12 (W.D. Ky. June 2, 2010). The Sixth Circuit, in an unpublished decision, specified that the language of the KEOA may not be supplanted with language from the ADA. *Reid v. Contel Cellular of Louisville, Inc.*, No. 94-5544, 1996 U.S. App. LEXIS 25348, at *5 (6th Cir. Sept. 4, 1996).

The KEOA's definition of a person with a disability appears to be more restrictive than the definition of an individual with a disability under the KCRA. *See Strulson v. Chegg, Inc.*, No. 3:15-CV-00828-CRS, 2016 U.S. Dist. LEXIS 70982, at *12 (W.D. Ky. May 31, 2016) (noting a comment that another judge in the Western District of Kentucky had made about the KEOA's definition of disability). In *Whitlow v. Kentucky Manufacturing Co.*, the Kentucky Court of Appeals held that the KEOA's definition of a person with a disability only encompasses physical impairments. 762 S.W.2d 808, 809 (Ky. 1988). Moreover, the Kentucky court determined that the plaintiff's problems with coordination, vision, and varicose veins were not disabilities under the KEOA.

In *Burge v. PPG Industries*, the court held that the plaintiff, who suffered from a hypersensitivity to aromatic hydrocarbons that caused him to have an allergic reaction when exposed to paint fumes, did not meet the definition of a person with a disability under the KEOA. No. 3:07-CV-246-H, 2008 U.S. Dist. LEXIS 72777, at *12 (W.D. Ky. Sept. 23, 2008). In determining that the plaintiff was not an individual with a disability, the court noted that he could "carry on normal activities such as bathing himself, doing chores, and engaging in normal relations with his family." *Id.*

In *Wells v. Huish Detergents, Inc.*, the plaintiff slipped on a stairway at his workplace. No. 1:98-CV-131-R, 1999 U.S. Dist. LEXIS 23938, at *2 (W.D. Ky. Nov. 30, 1999). He injured his knee during the fall. *Id.* The plaintiff "hobbled" and "wore a knee brace to work," but he did not take time off from working. *Id.* He also told his coworkers that his injury was only a minor one. *Id.* After the plaintiff was terminated for a reason unrelated to his knee, he began working for a new employer at a higher wage. *Id.* at *3. The plaintiff sued Huish Detergents for violations of the KEOA. *Id.* at *10. In ruling on his KEOA claim, the court noted that the plaintiff had not

missed work because of his knee injury, nor had he considered himself seriously injured. *Id.* at *12. Moreover, the court observed that the plaintiff moved into a more lucrative position after he had been terminated. *Id.* The court thus held that the plaintiff did not suffer from a substantial disability recognized by the KEOA and thus did not meet the statute's definition of a person with a disability. *Id.* at *12.

In this case, the Court similarly finds that Baum is not a person with a disability under the definition provided by KEOA, even taking the facts in the light most favorable to him. He testified in his deposition that his heart condition does not affect his ability to walk, perform manual tasks, care for himself, speak, breathe, learn, or work. Baum Dep. 103–07, ECF No. 23-1. He also stated that his heart condition does not affect his vision or hearing. *Id.* Additionally, Baum did not request any type of accommodation for his heart condition while he worked for Metro Restoration. *Id.* at 94. As Baum could carry on normal activities, he does not suffer from a serious physical impairment that would allow him to meet the definition of a person with a disability under the KEOA. Therefore, summary judgment is appropriate on Baum's KEOA claim.

IV.   <u>Conclusion</u>

The Court will grant Metro Restoration's motion for summary judgment on Baum's ADA claim based on the § 12102(1)(A) definition of a person with a disability to the extent that it involves substantial limitations on his ability to lift and work. The Court will deny Metro Restoration's motion for summary judgment on Baum's ADA claim based on the § 12102(1)(A) definition of a person with a disability to the extent that it involves alleged substantial limitations on his circulatory and cardiovascular systems. The Court will also grant Metro Restoration's motion for summary judgment on Baum's ADA claim based on the § 12102(1)(C) definition of a

person with a disability. The Court will grant summary judgment on Baum's KCRA and KEOA

claims. An order will be entered in accordance with this memorandum opinion.

March 8, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**