UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JONATHAN C. BAUM                                                           PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:15-cv-787-CRS

METRO RESTORATION SERVICES, Inc.                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the second motion of the Defendant, Metro Restoration Services, Inc. ("Metro Restoration"), for summary judgment. (DN 40.) For the reasons discussed below, the court will **GRANT** the Defendant's motion.

### I.     BACKGROUND

The facts of this case were previously recounted at length in this court's Memorandum Opinion entered on March 9, 2017 (DN 25.) However, the court briefly will review the facts and procedural history of this case.

    A.   Factual Background

The Plaintiff, Jonathan C. Baum ("Baum") began working at Metro Restoration in May of 2013. (DN 23-1, 38.) Metro Restoration is a restoration company that remediates properties after severe weather events or other events resulting in the destruction of properties. (*Id*.) In his position as a scheduler at Metro Restoration, Baum's primary responsibility was to schedule crews of workers to remediate customers' properties. (*Id*. at 40.) While Baum claims that he was permitted to perform his work duties at home from his personal cell phone, the Defendant stated that Baum was still expected to participate in site visits, inventory equipment, and deliver

equipment from crews. (DN 23-2, 16 – 17.) The Defendant also stated that Baum's work capabilities would be restricted by working from home because he would be unable to organize paperwork and lay out schedules like he could at the office. (DN 23-1, 74.)

In 2014 and 2015, Baum experienced several personal life events that resulted in absences from work, including a separation and divorce. (*Id*. at 12.) In December of 2014, Baum was diagnosed with heart palpitations and an enlarged right ventricle in his heart. In February of 2015, Baum was diagnosed with an atrioventricular block, Mobitz type 1, Bradycardia, and chest pain. (*Id*. at 92; DN 23-4.) Baum missed work on several occasions for reasons related to these diagnoses. (DN 23-2, 30.) After one procedure, Baum's doctors imposed a brief weight restriction lasting less than one week. (DN 23-1, 105.) Nevertheless, Baum testified that his heart condition did not affect his ability to walk, perform manual tasks, care for himself, speak, breathe, learn, see, hear, or work. (*Id*. at 103 – 07.) He testified that at no point in his employment did he request accommodations for his heart condition. (*Id*. at 94.)

Baum's direct supervisor at Metro Restoration was Patrick Cahill ("Cahill"), the owner and CEO of Metro Restoration. (DN 23-2, 33.) On April 8, 2015, Cahill went to Baum's house and informed him that he was terminated from his position as a scheduler. (DN 23-1, 84 – 85.) According to Baum, Cahill told him that he was terminated because his "health issues and doctors' appointments" were causing him to miss too much work. (*Id*. at 86.) Metro Restoration's office manager allegedly recorded 18 days between January and April of 2015 that Baum left the office early or failed to appear at the office altogether. (DN 23-2, 114.)

Cahill testified that Baum was "way too busy with his child care and health issues and doctor's appointments and everything but the job I hired him to do." (*Id*. at 122.) However, Cahill also offered Baum an alternative position with the company as an estimator. (DN 23-1,

87.) Baum claimed he could not accept this position as it would require him to get on roofs, which he was not comfortable doing. (*Id*. at 90 – 91.) Baum started a new job at a metal shop in November of 2015. (*Id*. at 27, 29.) In 2016, Baum left his job at the metal shop and accepted a position at Ford Motor Company. (*Id*. at 20.)

B. Procedural History

Baum filed a Complaint against Metro Restoration in Jefferson County, Kentucky Circuit Court, which was subsequently removed to this court on October 19, 2015 pursuant 28 U.S.C §§ 1331 and 1441. The Complaint alleges two counts: (1) discrimination based on disability under the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"); and (2) a violation of the Kentucky Equal Opportunities Act ("KEOA").

On March 9, 2017, this court granted in part and denied in part the Defendant's first motion for summary judgment. The court granted Metro Restoration's motion for summary judgment on: (1) Baum's ADA claim based on the 42 U.S.C. § 12102(1)(A) definition of a person with a disability to the extent that it involved substantial limitations to his ability to lift and work; (2) his ADA claim based on the Section 12102(1)(C) definition of a person with a disability; and (3) Baum's KCRA and KEOA claims.

The court denied the Defendant's summary judgment motion as to Baum's ADA claim based on the Section 12102(1)(A) definition of a person with a disability to the extent that it involved alleged, substantial limitations on his circulatory and cardiovascular systems. The court declined to dismiss this claim because the Defendant did not address this specific issue in its briefing. As such, Baum's only remaining claim was his ADA claim based upon the definition of a disability to the extent it substantially limited his circulatory and cardiovascular systems.

Metro Restoration filed a motion to alter or amend the court's March 9, 2017 opinion and order. The court denied this motion, finding that the Defendant's arguments on the motion were "primarily a request to have another chance to present its case to the Court" which was "procedurally improper" under Fed. R. Civ. P. 59(e) or 60(b). (DN 32, 6.)

On September 7, 2017, Metro Restoration filed a second motion for summary judgment, which is now before the court.

## II. STANDARD

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). It is the burden of the nonmoving party to "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

## III. DISCUSSION

1. <u>Whether Metro Restoration's motion was filed timely</u>

Before turning to the merits of Baum's remaining ADA claim, the court first must address Baum's contention that Metro Restoration's second motion for summary judgment is untimely and therefore should be denied.

On February 3, 2016, Magistrate Judge Colin Lindsay entered a scheduling order holding that all dispositive motions should be filed no later than November 15, 2016. (DN 13.) Metro Restoration filed its first summary judgment motion on this deadline, November 15. Based upon the scheduling order, dispositive motions filed after this deadline would be considered untimely. Nevertheless, Metro Restoration filed its second motion for summary judgment almost a year later, on September 7, 2017.

Metro Restoration contends that its motion is timely based upon the court's language in its memorandum opinion denying Metro Restoration's motion to alter or amend the March 9, 2017 memorandum opinion and order. While this court denied Metro Restoration's motion to alter or amend, it held that "this [opinion and order] does not, however, preclude Metro Restoration from filing a second motion for summary judgment on the circulatory-and-cardiovascular-defined ADA claim that is properly supported." (DN 32, 6.) Metro Restoration has construed this statement as a narrow extension of the February 3, 2016 scheduling order and considers their second motion for summary judgment timely.

The court notes the importance of a scheduling order and parties' adherence to its deadlines. However, the circumstances of this case are such that the court will consider the Defendant's second motion for summary judgment on the merits.

First, the court finds that Metro Restoration has not acted in bad faith in filing its second motion for summary judgment. While the Defendant did not move to extend the dispositive motion deadline, Metro Restoration relied upon the court's language in the memorandum opinion denying the Defendant's motion to alter and amend, which indicated that the Defendant could file a second motion for summary judgment. Next, the Plaintiff would not be prejudiced by the court's consideration of the motion, as the Plaintiff was able to respond fully to Metro

Restoration's second motion for summary judgment. For these reasons, the court in its discretion will consider the Defendant's motion.

2. <u>Whether Baum has presented sufficient evidence of a disability</u>

The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. prohibits an employer from discriminating against an employee with a disability. At issue on this motion is whether Baum has provided sufficient evidence for a jury to conclude that he has met the Section 12102(1)(A) definition of a person with a disability. Under this section, "disability" is defined as: "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12101(1)(A).

Thus, in order to be considered disabled under Section 12102(1)(A), Baum must not only show that he has a physical or mental impairment, but that the impairment also "substantially limits one or more major life activities." *Id*. *See also Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) ("Not every impairment is a disability within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial.").

In 2008, Congress amended the ADA in order to emphasize the "broad scope of protection to be available under the ADA" and to clarify that "the question of whether an individual's impairment is a disability under the ADA should not demand excessive analysis." 110 P.L. 325(7)(b)(1), (5). As such, the term "substantially limits" as used in Section 12102(1)(A) should be construed broadly in favor of "expansive coverage, to the maximum extent permitted by the terms of the ADA" and is not intended to be a "demanding standard." 29 C.F.R. § 1630.2(j)(1).

The ADA regulations also list what constitute "major life activities" under Section 12102(1)(A). *Id*. at § 1630.2(i). Major life activities are not just limited to those readily apparent, such as the ability to care for oneself, perform manual tasks, and work; "the operation of a major bodily function," such as circulatory or cardiovascular function, is also considered a major life activity under the ADA. *Id*. at § 1630.2(i)(1)(ii).

Metro does not appear to dispute that Baum has presented evidence that he suffers from an impairment; indeed, medical records show that Baum has been diagnosed with heart palpitations, an enlarged right ventricle, atrioventricular block, Mobitz type 1, and Bradycardia. Neither does the Defendant dispute that circulatory and cardiovascular functions are considered major life activities under the ADA. Rather, Metro Restoration argues that Baum cannot establish a *prima facie* case that Baum's heart condition *substantially limits* his circulatory and cardiovascular functions.

The Defendant's argument rests on its claim that expert witness testimony is required to prove that Baum's impairments substantially limit his circulatory or cardiovascular systems. Metro Restoration states that Baum's medical records are insufficient on this issue, and further, that it is impossible for Baum to provide such expert testimony at trial because the deadline to disclose expert witnesses has passed without Baum disclosing an expert. The Defendant refers the court to the holding in *Felkins v. City of Lakewood* to support its contention that, in some cases, expert testimony is required to prove that an impairment substantially limits a major life activity. 774 F. 3d 647 (10th Cir. 2014). The Court in *Felkins* held that the plaintiff did not establish the *prima facie* elements of a disability. The Court stated that a diagnosis of a condition, and "how that condition causes limitations on major life activities," are "beyond the realm of common experience and… require the special skill and knowledge of an expert

witness." *Id*. at 652 (citing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F. 3d 1207, 1214 (10th Cir. 2011)). The findings in *Felkins* are consistent with general evidentiary principles, as lay testimony on medical issues is always inadmissible to the extent it is "based on scientific, technical, or other specialized knowledge" requiring "the special skill and knowledge of an expert witness." *Id*. Therefore, Baum cannot rely on lay testimony to prove that he has any medical conditions or that his alleged conditions substantially limit his cardiovascular or circulatory function.

Thus, the question is whether Baum has presented sufficient admissible medical evidence establishing a substantially limiting condition on his cardiovascular and circulatory functions for a jury to find that he suffers from an ADA-defined disability. The Plaintiff has provided the notes of Dr. Chandhiran Rangaswamy ("Dr. Rangaswamy"), a physician with the Louisville Heart Specialists. The recorded notes from Baum's December 18, 2014 appointment indicate that Baum had been experiencing intermittent left-sided chest discomfort and occasional sharp, piercing pain. (DN 23-9, 7.) Notes from a February 19, 2015 visit with Dr. Rangaswamy state that Baum's "active problems" included "AV block, Mobitz 1," Bradycardia, chest pain, and right ventricular enlargement. (Id. at 4.) On this date, a review of Baum's cardiovascular system, noted under "History of Present Illness," found that he was continuing to experience intermittent palpitations and chest discomfort. While these records are sufficient to establish the existence of impairments, such as Bradycardia or Mobitz 1, there is no evidence describing or explaining these diagnoses, whether such conditions affect his circulatory or cardiovascular functions, and if so, to what extent. These are questions beyond the realm of common experience and only can be answered by an expert.[1]

---

[1] The Plaintiff urges the court to permit him to supplement his expert disclosures to include his treating physicians. The court denies this request. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) ("District courts have

Because there is a dearth of admissible medical evidence in the record concerning how or even if Baum's diagnoses limit is circulatory and cardiovascular systems, a jury would be unable to find that Baum's conditions substantially affect any major bodily functions. Even construing the term "substantially limits" to the maximum extent permitted by the ADA, the Plaintiff is still required to produce *some* evidence that his impairments substantially limit a bodily function, and lay evidence on this element is inadmissible. The court will grant the Defendant's second motion for summary judgment and dismiss the Plaintiff's remaining claim of disability discrimination under the ADA.

### IV. CONCLUSION

For the reasons stated, the court will **GRANT** the Defendant's second motion for summary judgment. Baum's ADA claim based on the Section 12102(1)(A) definition of a person with a disability to the extent that it involved substantial limitations on his circulatory and cardiovascular systems will be dismissed with prejudice.

The court will enter an order in accordance with this opinion.

June 12, 2018

Charles R. Simpson III, Senior Judge
United States District Court

---

broad discretion to exclude untimely disclosed expert-witness testimony.") The deadline for disclosing experts expired more than a year before the Defendant filed its second motion for summary judgment. Baum has not shown good cause for this delay, and further, the Defendant would be prejudiced by the identification of an expert at this late stage of litigation. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (Affirming the district court's denial of the plaintiff's motion to amend the scheduling order because the plaintiff "failed to show good cause" and because the defendant "would suffer undue prejudice.").

In the alternative, the Plaintiff argues that Dr. Rangaswamy should be permitted to testify as a non-expert fact witness at trial. Even if Dr. Rangaswamy was permitted to testify at trial, however, his testimony would be confined to his diagnosis and treatment of Baum as reflected in the medical records. He would be unable to opine on whether Baum's conditions substantially limited his circulatory or cardiovascular systems, as this would be "beyond the scope" of Baum's diagnosis and treatment. *See McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 933 (E.D. Ky. 2014) (If "the treating physician testifies beyond the scope of the treatment rendered and gives opinion testimony based on his scientific, technical, or otherwise specialized knowledge, then the treating physician is still testifying as an expert witness.") (internal quotations omitted).