UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JONATHAN C. BAUM                                                                PLAINTIFF

vs.                                              CIVIL ACTION NO. 3:15-CV-00787-CRS

METRO RESTORATION SERVICES, INC.                                  DEFENDANT

**MEMORANDUM OPINION**

I. **Introduction**

This matter is before the Court on Defendant Metro Restoration Services, Inc.'s, ("Metro") third motion for summary judgment. DN 56. Plaintiff Jonathan C. Baum ("Baum") filed a response, DN 58, and Metro filed a reply, DN 59. The matter is now ripe for review. For the following reasons, Metro's motion for summary judgment will be DENIED.

II. **Facts and Procedural History**

This is an employment discrimination case. Metro repairs property damage caused by catastrophic events like storms, winds, and fires. DN 56-1 at 1. Baum worked at Metro as a scheduler. DN 58 at 3. His responsibilities consisted of calling, scheduling, and dispatching work crews to Metro's customers after catastrophic events. DN 56-1 at 1. Baum worked in this position from May 2013 to April 8, 2015. DN 58 at 3–4.

Metro has certain attendance requirements for employees because of the unpredictable nature of their business. DN 56-1 at 2. Metro requires employees to work outside of normal working hours because of severe weather or other catastrophic events. *Id*. Further, Metro's employees are required to physically report to work, and Metro's employee handbook states that

1

excessive absences could result in discipline or termination. *Id.* at 2–3. While Metro has this stated policy, it also allows employees to work from home. DN 58 at 4. Baum's supervisor, Patrick Cahill ("Cahill"), allowed Baum to work from home and other locations besides Metro's office. *Id*. Baum worked from home regularly. *Id*.

In December of 2014, Baum began experiencing heart problems. *Id.* From December of 2014, to April of 2015, his condition required a trip to the emergency room, a CAT scan, a heart catheter implant, an echocardiogram, and a heart monitor. *Id*. at 5. Throughout the course of his treatment, Baum occasionally missed work for his medical appointments and Cahill allowed him to work remotely. *Id*. Baum kept Cahill apprised of his ongoing treatment and absences. *Id*. at 4–5. From January to April of 2015, Metro contends Baum was absent from work on eighteen occasions. *See* DN 56-4.

On the weekend of April 3–5, 2015, there was severe weather and a fire at the G.E. Appliance Park. *Id*. at 5. Baum contends that he worked remotely the entire weekend. DN 58 at 5. Metro contends that Baum failed to work that weekend and instead helped a fellow employee move into a new house. DN 56-1 at 5–6. Metro further contends that Baum failed to show up to work during a "critical time for [Metro's] business." *Id*. at 6.

Cahill fired Baum on April 8, 2015. *Id.* at 3. Cahill told Baum that Metro terminated him "due to his health issues and doctors' appointments and him not being able to sleep at night." DN 58 at 7. Metro contends it fired Baum for "his repeated failure to perform his job in a satisfactory fashion." *See* DN 56-6. Baum never received any discipline regarding his absences during his employment with Metro. DN 58 at 6. But, he was counseled about missing work and admitted that he missed more work during his last year with Metro. DN 56-1 at 6.

2

Baum filed an employment discrimination suit against Metro in Jefferson Circuit Court on September 23, 2015. DN 1. Baum brought claims under the American with Disabilities Act of 1990, 42 U.S.C. § 12111(5)(A) ("ADA"), the Kentucky Civil Rights Act, KRS § 344.030, and the Kentucky Equal Opportunities Act, KRS § 201.130. *Id.* The case was removed to this Court on October 19, 2015. *Id*. Metro filed its first motion for summary judgment after the close of discovery on November 11, 2016. DN 18. This Court granted Metro's motion in part and denied it in part. DN 25. Metro then filed a second motion for summary judgment, which this Court granted in full. DN 40; DN 47. Baum appealed the entry of summary judgment. DN 49.

On appeal, the Sixth Circuit reviewed whether Baum had created a genuine issue of material fact "over whether (1) he had a physical impairment that substantially limited one or more major life activities or (2) Metro regarded him as having such an impairment." DN 51 at 4. The Court held that this Court correctly granted summary judgment on Baum's "actual disability" claim. *Id.* at 5. The Court reversed the grant of summary judgment on Baum's "perceived disability" claim and remanded the case to this Court. *Id*. at 6–7.

At oral argument, Metro attempted to argue that, regardless of Baum's actual or perceived disability, Baum was not otherwise qualified for his position and was not protected under the ADA. The Sixth Circuit did not consider this argument. The Court stated:

> In its appellate briefing, Metro didn't contest Baum's qualification for the job without accommodation. At oral argument, however, Metro claimed for the first time that Baum was qualified for the job when he could make it to work but unqualified when he missed time to attend medical appointments. By failing to raise this argument earlier, Metro forfeited it. *United States ex rel. Marlar v. BWXTY-12, L.L.C.,* 525 F.3d 439, 450 n.6 (6th Cir. 2008). Thus, we will focus only on whether Baum has created a genuine issue of material fact over whether he was disabled.

*Id*. at 3. Metro subsequently filed its third motion for summary judgment with this Court on September 3, 2019. DN 56-1.

### III. Legal Standard

Summary judgment is appropriate when the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id*. In undertaking this analysis, the Court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of proof for establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the…presence of a genuine dispute." FED. R. CIV. P. 56(C)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### IV. Discussion

Metro raises two issues in its third motion for summary judgment, one procedural and one substantive. Metro's substantive claim is that Baum is not otherwise qualified for his former position and Metro is therefore entitled to summary judgment. Metro's procedural claim is that it

is not precluded from raising its substantive, qualification, argument on remand. The Court will address each issue.

### A. Waiver and Law-of-the-Case

Baum contends that Metro is precluded from raising the qualifications argument for two reasons. First, Baum argues that Metro waived its argument regarding his qualifications by not raising it in its appellate briefing and this Court is precluded from reviewing the issue. Second, Baum argues that the law-of-the-case doctrine also precludes this court from reviewing Metro's qualifications argument. The Court will address each argument.

#### i. Waiver

The Sixth Circuit stated that Metro "forfeited" its qualifications argument by not raising it in its appellate briefing. DN 51 at 3. Relying on this language, Baum argues that Metro is precluded from raising the qualification argument on remand because it waived it in response to Baum's appeal. It is well established that a party who raises an argument for the first time at oral argument waives the issue. *United States ex rel. Marlar v. BWXTY-12, L.L.C.,* 525 F.3d 439, 450 n.6 (6th Cir. 2008). And, an appellant who fails to raise an issue on appeal is precluded from raising the waived issue on remand. As the Sixth Circuit stated in *JGR, Inc.*, "[a] party that fails to appeal an issue 'waive[s] his right to raise the [] issue [] before the district court on remand or before this court on appeal after remand." *JGR, Inc., v. Thomasville Furniture Indus., Inc.,* 550 F.3d 529 at 532 (6th Cir. 2008). However, this waiver does not preclude an *appellee* from raising a waived issue on remand. The waiver doctrine prevents an appellant from piecemealing its arguments on appeal instead of raising every issue on the first appeal for the appellate court. This prevents the appellant from taking multiple bites at the apple. As the Sixth Circuit noted in *United States v.*

*Adesida,* "it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997)(quoting *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2nd Cir. 1981)). The same logic does not apply to appellees because appellees do not raise issues on appeal; appellees respond to issues raised by the appellant.

In this case, Baum appealed this Court's decision to grant summary judgment on two issues: (1) whether Baum was actually disabled, and (2) whether Metro perceived Baum to be disabled. Metro was not required to raise the qualifications issue before the appellate court because Metro was not the appealing party. To hold otherwise would require appellees to preemptively argue every conceivable issue on appeal in a "speak now or forever hold your peace" approach to appellate practice. Without binding authority to do so, this Court will not impose that rule here. Therefore, the Court will not preclude Metro's qualifications argument because it did not raise the issue in its appellate briefing.

      **ii.    Law-of-the-Case**

Baum next argues that the qualifications issue was necessarily decided by the Sixth Circuit and therefore the law-of-the-case doctrine precludes this Court from considering Metro's argument. The law-of-the-case doctrine holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Kindle v. City of Jeffersontown, Ky.,* 589 Fed.Appx. 747, 752–753 (6th Cir. 2014)(quoting *Scott v. Churchill*, 377 F.3d 565, 569–570 (6th Cir. 2004)). "The purpose of the law-of-the-case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'" *Howe v. City of Akron,* 801 F.3d 718, 739 (6th Cir. 2015)(quoting *Sherley v. Sebelius*, 698 F.3d 776, 780 (D.C. Cir. 2012))(emphasis in original). Specifically, the "mandate

rule" requires that a district court be "bound to the scope of the remand issued by the court of appeals" and "limited to those questions necessarily decided in the earlier appeal." *Kindle*, 589 Fed.Appx. at 753. An issue is deemed to be "necessarily decided" if the issue was "fully briefed and squarely decided in an earlier appeal." *Perkins v. Am. Elec. Power Fuel Supply, Inc.,* 91 Fed.Appx. 370, 374 (6th Cir. 2004). The Sixth Circuit has held that the law of the case doctrine "does not apply to issues that a party could have raised, but did not." *Howe,* 801 F.3d at 740. And, further, the Sixth Circuit has held that "[w]here there is substantial doubt as to whether a prior panel actually decided an issue, the district court should not be foreclosed from considering the issue on remand." *Westside Mothers v. Olszewski*, 454 F.3d 532, 539 (6th Cir. 2006).

Metro did not "contest" Baum's qualifications for his job in its appellate briefing. DN 51 at 3. It tried to do so at oral argument. *Id*. The Sixth Circuit did not consider this argument in its opinion and stated "[b]y failing to raise the argument earlier, Metro forfeited it." *Id*. The Court continued by saying it would "focus *only* on whether Baum has created a genuine issue of material fact over whether he was disabled." *Id.* (emphasis added). The Sixth Circuit's opinion was limited to that narrow scope. The Court was not fully briefed and did not squarely decide whether Baum was otherwise qualified for his job. Accordingly, the law-of-the-case doctrine does not preclude this Court from considering the issue here.

### B. Baum's Qualifications

To recover on a claim for discrimination under the ADA, a plaintiff must demonstrate that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability. *Ferrari v. Ford Motor Co.,* 826 F.3d 885, 891 (6th Cir. 2016)(citing *Monette v. Elec. Data Sys. Corp*., 90 F.3d 1173, 1178 (6th Cir. 1996); *Lewis v. Humboldt Acquisition Corp*., 681

F.3d 312, 317, 321 (6th Cir. 2012) (en banc) (abrogating *Monette* in part by holding that a plaintiff must show that he or she suffered an adverse employment action "because of" rather than "solely by reason of" disability)). A plaintiff may demonstrate these elements by introducing either direct or indirect evidence of discrimination. *Ferrari*, 826 F.3d at 891 (quoting *Monette*, 90 F.3d at 1178).

In this case, the first and third elements are not at issue. The Sixth Circuit held that a reasonable jury could find that "Cahill perceived Baum to have a physical impairment and fired Baum because of that perception." DN 51 at 7. The only issue for this Court is whether there is a genuine issue of material fact as to whether Baum is otherwise qualified to perform the essential functions of his position, with or without accommodation.

Metro contends that attendance is an essential function of Baum's position and Baum's excessive absences made him not otherwise qualified for his job. The Sixth Circuit has held that when attendance is an essential function of employment "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Day v. Nat'l Elec. Contractors Association,* 91 F.Supp.3d 1008 (1018). The Sixth Circuit has also held that the reasons for an employee's absences, whether related to his medical condition or otherwise, are not relevant in determining whether a plaintiff is otherwise qualified to perform essential functions of his job. *Brenneman v. MedCentral Health Sys.,* 366 F.3d 412, 418–419 (6th Cir. 2004).

Metro supports its argument in two steps. First, Metro argues that it has clear and explicit attendance policies and procedures and, therefore, attendance is an "essential function of employment" with Metro. DN 56-1 at 10–11. Second, Metro directs the Court to Baum's eighteen absences between January and April of 2015 as evidence of his excessive absenteeism. *See* DN 56-4. Specifically, Metro cites to Baum's alleged failure to report to work during the weekend of

April 3–5, 2015. DN 56-1 at 5–6. Metro's services were in high demand that weekend because of the G.E. Appliance Park fire and weather events. *Id*. Because of this high demand, Metro contends that Baum's absence was particularly egregious. *Id*. Metro fired Baum on April 8, 2015, the Wednesday after the weekend of April 3–5. *Id.* at 3.

Baum counters that his position did not require him to be physically present at work to perform his duties. DN 58 at 16–17. Cahill admitted that Metro allowed Baum to work remotely. *Id.* at 16. Baum corroborated this understanding in his deposition, stating that if he was not able to come into work, "I'd call [Cahill] and let him know, and then I would work from home from my phone doing the same dispatching, doing the same job that I was doing at Metro." *Id.* at 17. Further, Metro never disciplined Baum for his absences. *Id.* at 16

In light of the undisputed fact that Metro allowed Baum to work remotely, Metro has failed to demonstrate that Baum's physical presence at Metro's office was an essential function of his job. Indeed, as the Sixth Circuit noted with regard to Metro's purported reason for firing Baum, "the company never mentions Baum's frequent remote work and never explains which job duties he failed to perform." DN 51 at 6. Metro asks this Court to issue summary judgment because it has an attendance policy and Baum was not physically present at the office eighteen times in the span of four months. As the Sixth Circuit previously admonished, that would require this court to view the evidence in the light most favorable to Metro instead of Baum. DN 51 at 6. Based on Baum's ability to work remotely and the lack of discipline regarding his absences, a reasonable jury could find that he was otherwise qualified for his position. Accordingly, Metro's motion for summary judgment will be denied.

## V. Conclusion

For the reasons stated herein, a separate order will be entered this date denying Metro's motion for summary judgment. DN 56.

December 18, 2019

**Charles R. Simpson III, Senior Judge
United States District Court**